Filed 2/28/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DONALD RAY HILL, JR.,<br><br>     Defendant and Appellant. | A168750<br><br>(Solano County Super. Ct. No. FCR306922) |

     In 2014, defendant Donald Hill, Jr., handed a gun to Timothy Mitchell who, along with Danny Jeffreys, walked behind a nearby fence and opened fire on another group of men across the street. Tereaun Berry was killed and his brother Trent was injured. In 2015, Hill was convicted by a jury of the first degree murder of Tereaun Berry and the attempted murder of Trent Berry. On direct appeal in 2018, we affirmed Hill's attempted murder conviction but reversed his murder conviction, concluding that the trial court erred in refusing the defense's requested instruction on the lesser-included offense of attempted murder on that count. In 2019, Hill entered into a plea agreement whereby he pleaded no contest to a newly-added count 3—the attempted premeditated murder of Tereaun Berry—and the original murder count was dismissed in exchange for a sentence of life with the possibility of parole on each count, to run concurrently.

     In 2022, Hill petitioned for resentencing relief under Penal Code section 1172.6. After the district attorney's office conceded that Hill had established a prima facie case for relief and the trial court so found, and after

1

two unsuccessful attempts to obtain reconsideration of that ruling, the petition proceeded to an evidentiary hearing, at the conclusion of which the trial court denied it. Hill argues that the trial court erred in denying the petition by relying on principles of implied malice, and that the prosecution failed to carry its evidentiary burden at the hearing to prove that he was guilty of either count of attempted murder. We affirm.

## BACKGROUND

As we briefly described the facts of the underlying offenses in our previous opinion on direct appeal:

"In April of 2014, defendant Donald Hill was standing with a group of men [including Travon Wayfer and Darren McFadden] near the mailboxes outside his apartment complex when he allegedly handed a gun to Timothy Mitchell. Shortly thereafter Mitchell, together with Danny Jeffreys, walked behind a fence and opened fire on another group of men across the street [including Lamont Harris]. Tereaun Berry was killed, and his brother Trent was injured." (*People v. Hill* (Aug. 22, 2018, A149469) [nonpub. opn.], pp.1–2 (*Hill*).)

"By information filed September 15, 2014, the Solano County District Attorney charged Hill, McFadden, Wayfer, and Jeffreys with one count of murder for the death of Tereaun Berry (count 1) (Pen. Code, § 187(a)), and one count of attempted murder for the shooting of Trent Berry (count 2) (Pen. Code[1], §§ 664/187(a)).[2] Jeffreys and McFadden were tried together between November 17, 2014 and December 17 of 2014, and were found guilty of

---

[1] Further undesignated statutory references are to the Penal Code.

[2] "At the time the information was filed, Mitchell remained at large. While [Hill's direct] appeal was pending, [Mitchell] was tried for murder and attempted murder and acquitted."

2

murder and attempted murder as charged. . . . Wayfer pled no contest to accessory after the fact to the murder and testified as a witness for the prosecution.  Hill's trial began with the prosecution's case on September 16, 2015 and took place over approximately six court days until September 28, 2015.  At the end of the trial, the information was amended to allege that Hill committed the attempted murder of Trent Berry willfully and with premeditation and deliberation.

"During the preparation of the jury instructions, defense counsel requested that the jury be instructed on the lesser included offense of attempted murder on count 1 with respect to Tereaun Berry, on the theory that the jury could find that Mitchell and Jeffreys were not acting in concert, that Jeffreys had fired the shot that killed Tereaun Berry, and that Hill had aided and abetted only Mitchell, so that Hill was guilty of at most attempted murder.  The trial court ultimately declined to give the instruction.

"In the afternoon of the second day of deliberations, the jury sent a request to the trial court to the effect of 'whether it matters who fired the fatal shot.'  The trial court responded, over defense counsel's objection, by telling the jury to refer to the previously given standard instructions regarding aiding and abetting liability.  Approximately 10 minutes later the jury reached a verdict, finding Hill guilty on both counts[3] and true the special finding that he acted willfully and with premeditation and deliberation with respect to the attempted murder.

---

[3] As Hill's opening brief states, the jury found him guilty of first degree murder on count 1.

3

"Hill moved for a new trial on the murder count, arguing that the trial court erred in refusing to instruct the jury on the lesser included offense of attempted murder. After a hearing, the trial court denied the motion.

"The trial court then sentenced Hill to 25 years to life on count 1, and a consecutive term of 15 years to life on count 2, for a total term of 40 years to life." (*Hill*, *supra*, A149469, pp. 7–8, footnotes omitted.)

**2018 Direct Appeal**

On direct appeal in 2018, Hill argued with respect to the murder count that the trial court erred in refusing to instruct on the lesser included offense of attempted murder and that the trial court erred by failing to correctly answer the jury's question. (*Hill*, *supra*, A149469, p. 8.) With respect to the attempted murder count, Hill argued that because the instructions on self-defense, imperfect self-defense, and heat of passion voluntary manslaughter made reference to the mental state of the "perpetrator" and not the "defendant," they improperly failed to inform the jury that Hill's state of mind had to be considered separately from the state of mind of either Mitchell or Jeffreys. (*Hill*, *supra*, A149469, pp. 23–24.) We rejected Hill's argument of prejudicial error with respect to the attempted murder count, but agreed with both of his arguments regarding the murder count, explaining as follows:

"There was no dispute that there were (at most) *two* perpetrators of the crimes alleged [Mitchell and Jeffreys], and Hill was alleged to have directly assisted only [Mitchell]. . . . [T]he testimony of Tonya Neal suggested that it was Jeffreys who fired the fatal shot, and the People concede that 'the evidence did not establish that Mitchell's shots struck anyone.' One critical legal issue before the jury was thus whether and how Hill's alleged assistance

4

of Mitchell could translate into criminal liability for the actions of Jeffreys." (*Hill*, *supra*, A149469, pp. 19–20.)

"The theory on which Hill requested an attempted murder instruction had two factual components. The first was that it was Jeffreys, and not Mitchell, who had fired the shot that killed Tereaun Berry. The second was that Hill had aided and abetted only Mitchell, and not Jeffreys, and that if Mitchell was acting in concert with Jeffreys, Hill did not know that he was doing so. Both of these contentions find support in the record." (*Hill*, *supra*, A149469, p. 12.)

We reversed Hill's murder conviction but affirmed his conviction for attempted murder, and remanded the case to permit the prosecution the opportunity to retry Hill on the murder count or to accept a modification of the judgment to reflect a conviction for attempted murder on that count. (*Hill*, *supra*, A149469, p. 27.)

**Senate Bill No. 1437**

Meanwhile, in 2018, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, [and] was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*), quoting Stats. 2018, ch. 1015, § 1, subd. (f).) Effective January 1, 2019, Senate Bill 1437 amended sections 188 (defining the "malice" required for murder) and 189 (defining first and second degree murder) to eliminate murder liability based on the natural and probable consequences doctrine and to significantly narrow the scope of the felony-murder rule. (*People v. Curiel* (2023) 15 Cal.5th 433, 440 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707, fn. 1; *Lewis*, *supra*, 11 Cal.5th at p. 959.)

5

Senate Bill 1437 also created a procedure (formerly at section 1170.95, now at section 1172.6) for defendants convicted of murder under prior law to seek retroactive relief if they "could not be convicted under the law as amended." (*Lewis*, *supra*, 11 Cal.5th at p. 957; *Curiel*, *supra*, 15 Cal.5th at p. 440.)

**2019 Plea to Attempted Murder**

On June 3, 2019, Hill entered a plea of no contest plea to a newly-added count 3—the attempted premeditated murder[4] of Trent Berry (§§ 187, 664)—with a maximum punishment of life with the possibility of parole, in exchange for the sentence on count 3 to run concurrently with the sentence on count 2 and for the dismissal of count 1.

On July 31, Hill was sentenced according to the plea agreement to concurrent terms of life with the possibility of parole on counts 2 and 3, and count 1 was dismissed.

**Senate Bill No. 775**

Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) made amendments to, inter alia, "[c]larif[y] that persons who were convicted of attempted murder or manslaughter under a theory of

---

[4] The plea agreement describes the charge as "PC 664/187–1st degree." In California, the crime of attempted murder is not divided into degrees, and premeditated attempted murder is not a separate offense from attempted murder. (*People v. Favor* (2012) 54 Cal.4th 868, 876–877; *People v. Smith* (2005) 37 Cal.4th 733, 740.) Rather, the provision in subdivision (a) of section 664 imposing life with the possibility for parole "if the crime attempted is willful, deliberate, and premeditated murder" constitutes a penalty provision prescribing an increase in punishment for the offense of attempted murder, and reflects legislative intent to create a penalty with a greater term rather than a substantive offense. (*People v. Favor*, *supra*, at pp. 876–877; *People v. Smith*, *supra*, 37 Cal.4th at p. 740.)

felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).)

The result of these amendments, as relevant here, is that attempted murder as a direct perpetrator or as a direct aider and abettor remain viable theories of liability, while attempted murder as an aider and abettor under a natural and probable consequences theory does not. (See *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*) [§ 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)

In relevant part, section 1172.6 currently provides that "[a] person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts when all the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of . . . attempted murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for

7

relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Strong*, *supra*, 13 Cal.5th at p. 708, quoting § 1172.6, subd. (c).)

While the trial court generally should not reject a petitioner's factual allegations at the prima facie stage, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

Following the issuance of an order to show cause, if the prosecution does not stipulate that the petitioner is eligible for resentencing, "the court must hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).)" (*Strong*, *supra*, 13 Cal.5th at p. 709.)

**2022 Petition for Resentencing**

On April 25, 2022, Hill filed a petition for resentencing under what is now section 1176.2. He checked the boxes indicating that the three requirements of section 1172.6, subdivision (a)(1)–(3) were met, including that he "could not presently be convicted of murder or attempted murder

8

because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Hill also requested that counsel be appointed to represent him.

On June 17, the Solano County District Attorney's office filed a short response to the petition. The response inaccurately stated that Hill's first degree murder conviction on count 1 had been "overturned . . . due to insufficient evidence," and then concluded: "The People submit that at this juncture, Petitioner Hill has made a prima facie showing, however, the defendant is not entitled to relief under [section 1172.6] as he was a major participant who acted in reckless disregard for human life . . . in that he provided the gun to co-defendant Mitchell, one of the two shooters who killed the first victim and injured the second victim."

A brief hearing took place on July 7, at which Hill was represented by his original trial counsel, who stated that the prosecution had "conceded that a prima facie case exists . . . [s]o I think all that we need to do is set a hearing."[5] A hearing was set for October 17 and continued several times.

On January 27, 2023, Hill's counsel filed facts and authorities in support of the resentencing petition, arguing that "due process constitutional provisions should not let these convictions stand for being an accomplice to an acquitted man," and there was "reasonable doubt Hill was a major participant who acted with reckless indifference to human life."

On March 13, another hearing took place, at which hearing the prosecutor stated that "[t]he lawyer that was prepared . . . to do this hearing is not available today," and indicated that "because of the complicated

_____

[5] Although the court did not expressly say so at the hearing, nor is such a finding reflected in the minutes, the prosecution would later state in its first motion for reconsideration that "[o]n July 7, 2022 the court found a prima facie case."

9

nature" of the case, "I am going to reassign it to the trial lawyer, [Barry Taira], because he understands it." A further hearing was set for April 3.

**The First Motion For Reconsideration**

On March 21, the district attorney's office—now represented by Barry Taira—filed a motion to reconsider the court's finding that Hill had made a prima facie case for relief under section 1172.6. The motion argued that Hill failed to meet two requirements of section 1172.6, first that he "was not prosecuted under a theory of *felony murder* or under the *natural and probable consequences doctrine. . . .* Instead, [Hill] was charged with the murder of Tereaun Berry and the attempted murder of Trent Berry as an aider and abettor *to murder*, and not some underlying felony that formed the basis for 'felony murder' or 'natural and probable consequences' murder." Second, the motion argued that the jury's guilty verdict on count 2 and Hill's no contest plea to attempted murder on count 3 both necessarily required intent to kill, such that he could still be convicted on both counts even after the changes to the law effected by Senate Bill 1437.

A hearing was held on the motion for reconsideration on May 1. The prosecutor indicated that he had received defense counsel's reply brief that morning, and asked for additional time review it before the motion was heard. Defense counsel took the position that "reconsideration in a criminal court is governed by Code of Civil Procedure 1008, and the People had ten days from the prima facie finding to request re-hearing. They haven't filed any writs or anything." He also argued that, with respect to the reversed murder count, the jury was given the definition of implied malice in CALCRIM No. 520, including its requirement that the defendant commit an act "the natural and probable consequences of [which] were dangerous to human life," and that those instructions "allowed them to find Mr. Hill guilty

10

of first degree attempted murder on implied malice if they read [the CALCRIM No.] 520 [instruction that] the judge gave them."

When pressed on his office's previous concession that a prima facie case had been made, the prosecutor explained that it was made by "someone who is no longer with our office," that "I don't think she was familiar with the case. I don't think she reviewed it before she submitted. [¶] This is not a felony murder case. There's no underlying crime. Even if the Court grants the motion, there's no underlying felony to sentence the defendant to. I think we're all wasting a lot of time here."

Ultimately, the trial court denied the motion for reconsideration: "I think that back in June of 2022, if those arguments would have been made then, the Court may have been in a position to rule differently. But at this point, we are nine, ten months later, and . . . I think pursuant to [Code of Civil Procedure section] 1008[, subdivision] (a), it is too late." The court set a further hearing on the petition for July 10.

**The Motion to Reconsider Redux**

On May 30, the prosecution filed a second motion to reconsider the trial court's finding that a prima facie case had been made—a motion it styled the "People's Motion to Reconsider Motion to Reconsider." On the motion's first page, it argued that Code of Civil Procedure section 1008, subdivision (a) "does not apply to criminal cases," with citation to *People v. Castello* (1998) 65 Cal.App.4th 1242, 1246–1250. It went on to argue that "the defendant's two first degree attempted murder convictions are not based upon a theory of felony murder or the natural and probable consequences doctrine. Accordingly, the jury was not given instructions on felony murder or the natural and probable consequences doctrine. Thus, the defendant i[s] ineligible for relief as a matter of law." (Italics omitted.)

11

At a hearing on July 10, the trial court acknowledged that it had "the power to reconsider," but after inaccurately stating that the "first-degree murder conviction was overturned on appeal due to insufficient evidence," concluded that "I am not changing my prior ruling that a prima facie case was established."

**Evidentiary Hearing on the Petition**

With that, the matter proceeded directly to an evidentiary hearing on the petition. After the prosecutor asked the court to take judicial notice of the jury instructions and the transcript of closing argument, both parties requested that the court take judicial notice of the entire record from Hill's 2015 trial, and the court indicated it was "taking judicial notice of the court's file, which includes the jury instructions."[6]

In argument, the prosecutor noted that there were no "instructions in here at all relating to felony murder or natural and probable consequences murder. There is, in fact, instructions in the traditional sense regarding attempted murder, and those jury instructions require that the People prove beyond a reasonable doubt that the defendant and the perpetrator intended to kill Trent Berry." He further argued that there "is no accusation that there was any type of robbery or carjacking or anything here. It was just straight-up murder under an aider and abettor theory."

Defense counsel argued that at trial the jury "knew [Hill] didn't shoot anybody. They knew, at worst, Mr. Hill handed Mr. Mitchell a gun." He argued that the jury instructions "suggested to them that the natural and probable consequence doctrine of implied malice is an avenue to convict on

---

[6] During the hearing, the court watched the surveillance video described in our opinion on direct appeal. (*Hill*, *supra*, A149469, pp. 2–3.)

12

attempted murder," presumably in reference to the definition of implied malice in CALCRIM No. 520, which includes the requirement that the defendant commit an act, "[t]he natural and probable consequences of [which] were dangerous to human life." (See CALCRIM No. 520.) Characterizing the question as "could the Court, sitting as a fact finder today, find beyond a reasonable doubt that Mr. Hill handing a firearm to Mr. Mitchell, who then walks across the street and within a minute or so starts firing, that Mr. Hill wanted everybody across the street to die," defense counsel argued, "I don't think the Court can and I don't think the Court should. I think the Court should find that attempted murder can't be proven beyond a reasonable doubt on these facts and that Mr. Hill should be resentenced to being an accomplice for [assault with a deadly weapon under section] 245[, subdivision (a)(2)] for each of the alleged victims."

The court took the matter under submission.

**The Trial Court's Decision**

On August 21, a further hearing was held at which the trial court denied the petition for resentencing. After an extensive discussion of *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*), the court explained that "in this case, the jury instruction[s] did not suggest that the prosecution relied on the theory of natural and probable consequences, or felony murder, for that matter. The parties both argued that there would have to be proof of malice for the conviction sought. . . . [¶] . . . [¶] . . . [Hill']s act of providing the firearm set the murder in motion. There was evidence of his knowledge and intent with regard to the direct perpetrator's life-endangering act. The act was one of implied malice." After noting that "there does not appear to be any underlying crime," and that Hill "does not point to any part of the record where it was discussed that assault with a deadly weapon was considered the

13

underlying offense," the trial court concluded that "the defendant participated knowingly and intentionally in the commission of the crime. Accordingly, the Court denies the defendant's motion for resentencing."

Hill filed a notice of appeal.

## DISCUSSION

### The Parties' Arguments

Hill's opening brief makes two arguments that the trial court erred in denying his petition for resentencing. First, he argues that the trial court erred in denying his petition under principles of implied malice and *Reyes*, *supra*, 14 Cal.5th 981. Second, he argues that the evidence before the trial court at the evidentiary hearing—which he contends included only the jury instructions, trial closing arguments, the surveillance video, and the trial testimony of Tonya Neal[7]—was insufficient to carry the prosecution's burden to prove that he was guilty of either count of attempted murder because it did not show that he acted with intent to kill or that his actions proximately caused Tereaun Berry's death or Trent Berry's injuries.

In response, the Attorney General concedes that the trial court erred in analyzing Hill's petition for resentencing under implied malice principles. He argues, however, that any error at the evidentiary hearing was harmless because the trial court erred in concluding that a prima facie showing had been made—with respect to count 2, because the jury instructions and verdicts establish that Hill was not convicted of attempted murder under the natural and probable consequences doctrine, and with respect to count 3, because Hill's no contest plea to premeditated and deliberate attempted

---

[7] As the Attorney General notes, this contention is at odds with defense counsel's request below that the court take judicial notice of the "entire record, including the jury instructions."

murder establishes that he acted with express malice. Alternatively, the Attorney General argues that a remand for a new evidentiary hearing is appropriate.

On reply, Hill does not substantively defend the trial court's finding that a prima facie showing was made with respect to count 2, instead arguing that the trial court did not abuse its discretion "in holding the Office of the District Attorney to its concession" by denying the motions for reconsideration. With respect to count 3, Hill argues that his no contest plea on count 3 does not preclude relief because the law was unclear at the time of that plea as to whether Senate Bill 1437 applied to attempted murder, and that he may have pleaded no contest because he believed a jury would convict him of attempted murder based on the natural and probable consequences doctrine.

**Applicable Law**

"Generally, in determining whether a trial court correctly denied a section [1172.6] petition after an evidentiary hearing, ' " 'we review the factual findings for substantial evidence and the application of those facts to the statute de novo.' " ' (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.)" (*People v. Cooper* (2022) 77 Cal.App.5th 393, 412.) "But where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*Reyes*, *supra*, 14 Cal.5th at p. 988.) And we independently review a trial court's determination of whether a petitioner has made a prima facie showing. (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1131.)

A defendant cannot use a section 1172.6 resentencing hearing to relitigate facts already determined, whether by plea, admission, or verdict. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [" 'The purpose of

15

section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved' "].) "[I]n a section [1172.6 proceeding], the trial judge isn't charged with holding a whole new trial on all the elements of murder. Instead, the parties will focus on evidence made relevant by the amendments to the substantive definition of murder." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) "[W]holesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing" is not permitted. (*Strong*, *supra*, 13 Cal.5th at p. 715.) "[F]actual findings should be given preclusive effect. The point . . . is to identify what those factual findings are and how they relate to the elements of [attempted] murder under a valid theory." (*Curiel*, *supra*, 15 Cal.5th at p. 470.)

In addition, "courts have uniformly held the sentence modification procedure under section 1172.6 to constitute an act of legislative lenity, not a new criminal prosecution." (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1067; see *Estrada v. Superior Court* (2023) 93 Cal.App.5th 915, 925 ["[S]ection 1172.6 remains a ' " 'resentencing procedure, not a new prosecution' " ' "].) Thus, a petitioner must generally show that a more favorable result would have been reached in the absence of any alleged error. (See *Lewis*, *supra*, 11 Cal.5th at p. 974; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 459 [where prosecution conceded prima facie case, error at evidentiary hearing under section 1172.6 "was harmless because it is not reasonably probable that absent the error appellant would have achieved a more favorable result"]; *People v. Vance* (2023) 94 Cal.App.5th 706, 717 [section 1172.6 hearing is "merely a state statutory right [and] a violation of the right is subject to the

16

state law harmless error standard" requiring prejudice]; see also *People v. Garrison* (2021) 73 Cal.App.5th 735, 746–747.)

Finally, although the parties agree that the trial court erred in analyzing the petition under implied malice principles, that does not settle the matter, because we review results, not reasoning. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 [" ' "a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason" ' "]; *Green v. Superior Court* (1985) 40 Cal.3d 126, 138 [it is a "settled principle of appellate review that a correct decision of the trial court must be affirmed on appeal even if it is based on erroneous reasoning"]; *People v. Braeseke* (1979) 25 Cal.3d 691, 700.)

With these principles in mind, we turn to Hill's arguments of error.

**The Trial Court Did Not Err In Denying the Petition With Respect to Count 2—Attempted Murder of Trent Berry**

**Additional Background**

In order to find Hill guilty on count 2—the premeditated attempted murder of Trent Berry—the jury was instructed, pursuant to CALCRIM No. 600, that the prosecution had to prove that "1. The defendant and perpetrator took at least one direct but ineffective step toward killing another person," and "2. The defendant and perpetrator intended to kill that person." The instruction went on: "A person may intend to kill a specific victim or victims and at the same time intend to kill everyone in a particular zone of harm or 'kill zone.' In order to convict the defendant of the attempted murder of Trent Berry, the People must prove that the defendant not only intended to kill Lamont Harris but also intended to kill Trent Berry or intended to kill everyone within the kill zone."

In addition, with respect to count 2, the jury was instructed, pursuant to CALCRIM No. 601: "If you find the defendant guilty of attempted murder under Count 2, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation. [¶] The person guilty of attempted murder acted *willfully* if he intended to kill when he acted. The person guilty of attempted murder *deliberated* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The person guilty of attempted murder *premeditated* if he decided to kill before acting."

As noted, the jury found Hill guilty on count 2, and found true the allegation that the attempted murder was done willfully and with premeditation and deliberation. (*Hill*, *supra*, A149469, p. 8.)

**Analysis**

In order to establish a prima facie case for relief under section 1172.6 with respect to count 2, Hill was required to show both that he was "convicted of . . . attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a); *Coley*, *supra*, 77 Cal.App.5th at p. 548), and that he "could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)). He cannot show either.

The jury in this case was not instructed on the doctrine of natural and probable consequences, which is described in CALCRIM Nos. 402 and 403. Thus, they could not have convicted Hill on this basis. (See, e.g., *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [because "no instructions were given on felony murder or murder under the natural and probable consequences doctrine," the petitioner was "ineligible for relief as a matter of law"]; *People*

18

*v. Soto* (2020) 51 Cal.App.5th 1043, 1055 [defendant "was not and could not have been convicted of second degree murder under the natural and probable consequences doctrine" because "the jurors were not provided any instruction on which they could have found [him] guilty of murder under that doctrine"]; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the [section 1172.6] petition should be summarily denied"].)

Instead, as noted, the jury was given CALCRIM Nos. 400 and 401, on the theory of direct aiding and abetting, as well as CALCRIM No. 600, which advised them that an attempted murder conviction required the prosecution to prove beyond a reasonable doubt that "the defendant and perpetrator intended to kill [the victim]." "Direct aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775." (*Coley*, *supra*, 77 Cal.App.5th at p. 548, citing *People v. Sanchez* (2022) 75 Cal.App.5th 191, 197; see *People v. Ramos* (2024) 103 Cal.App.5th 460, 465.)

In addition, even given that the trial court found a prima facie case for relief had been established and held an evidentiary hearing, the jury's verdict defeats Hill's claim for relief as to count 2. As the Supreme Court has now twice pointed out, "a relevant jury finding is generally preclusive in section 1172.6 proceedings." (*Curiel*, *supra*, 15 Cal.5th at pp. 453–454; see *Strong*, *supra*, 13 Cal.5th at p. 710 [relevant jury finding "ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude[s] the defendant from making a prima facie case for relief"]; *People v. Arnold* (2023) 93 Cal.App.5th 376, 386–387 [issue preclusion bars relitigating a jury's factual findings at a section 1172.6, subdivision (d)(3) evidentiary hearing].)

19

" '[W]e may look to the jury's verdicts, *and the factual findings they necessarily reflect*, to determine whether the record of conviction refutes the factual allegations in [Hill]'s petition.' (*Curiel, supra*, 15 Cal.5th at p. 465, italics added.)" (*People v. Morales, supra*, 102 Cal.App.5th at p. 1131.) As the trial court observed, the prosecution in this case "presented evidence to link [Hill] to the commission of the . . . attempted murder . . . through his intent to aid and abet the actual killing," in particular his "handing the gun to one of the shooters." With respect to Hill's mens rea, the jury's guilty verdict on this count means they necessarily concluded that the prosecution had proved beyond a reasonable doubt that "[Hill] and [the] perpetrator intended to kill [the victim]," and their true finding on the special [circumstance] allegation likewise means they concluded beyond a reasonable doubt that "[Hill] intended to kill when he acted." (See *Strong, supra*, 13 Cal.5th at p. 710.) There was no new evidence presented at the hearing, and under *Curiel* and *Strong*, the jury's factual findings had preclusive effect in Hill's section 1172.6 proceeding, and defeat his claim for resentencing relief on count 2 as a matter of law.[8]

---

[8] Before the trial court, Hill's counsel argued that he may have been convicted of attempted murder on count 2 based on the natural and probable consequences doctrine because the jury was instructed, with respect to the murder count, that a "perpetrator acted with *implied malice* if: [¶] He intentionally committed an act; [and] [¶] The natural and probable consequences of the act were dangerous to human life." Not so. As the trial court observed, in this case "there was no evidence of an underlying nontarget offense," and the jury was not instructed on the natural and probable consequences doctrine. The argument that the "natural and probable consequences" language in the definition of implied malice means that the jury could have convicted the defendant of murder under the natural and probable consequences doctrine has been repeatedly rejected. (See, e.g., *People v. Soto, supra*, 51 Cal.App.5th at p. 1059 ["The 'natural consequences' language in the instruction for second degree murder does not transform

20

**The Trial Court Did Not Err In Denying the Petition With Respect to Count 3—Attempted Murder of Tereaun Berry**

As noted, the Attorney General argues that Hill's no contest plea to the premeditated attempted murder of Tereaun Berry "necessarily admitted express malice, i.e., an intent to kill," and that the factual basis for the plea "would include the first trial that was reversed on appeal," demonstrating that Hill was not convicted of attempted murder under a natural and probable consequences theory of liability, and thus that the trial court should have denied the petition at the prima facie stage without holding an evidentiary hearing.

On reply, Hill first notes that at the time of his plea[9], "[t]he question of whether Senate Bill 1437 applie[d] to the crime of attempted murder ha[d] divided the Courts of Appeal," and thus that had he gone to trial instead of entering his plea, the prosecution could potentially have proceeded on a natural and probable consequences theory. (*People v. Alaybue* (2020) 51 Cal.App.5th 207, 222; see *id.* [collecting cases].) He then argues that his no contest plea did not represent an admission of having personally harbored an intent to kill, because "[u]nder the natural and probable consequences doctrine, there is no requirement that an aider and abettor reasonably

Soto's conviction into one for murder under the natural and probable consequences doctrine within the meaning of section [1172.6]"]; *People v. Carr* (2023) 90 Cal.App.5th 136, 144 [" '[T]he use of the term "natural consequences" in the . . . definition of implied malice does not import into the crime of murder the case law relating to the distinct "natural and probable consequences" doctrine developed in the context of aiding and abetting liability' "].)

[9] As noted, Hill pleaded no contest to the attempted premeditated murder of Tereaun Berry on June 3, 2019, after Senate Bill 1437's effective date of January 1, 2019, but before Senate Bill 775's effective date of January 1, 2022.

21

foresee an attempted premeditated murder as the natural and probable consequence of the target offense.  It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation." (*People v. Favor*, *supra*, 54 Cal.4th at p. 880.)  He relies on cases holding that, at the prima facie stage where the defendant was convicted by plea and where the plea record does not contain "pertinent admissions regarding [defendant's] role in the offense," the record did not conclusively establish that the defendant was convicted under a still-valid theory.[10]  (See, e.g., *People v. Williams* (2024) 103 Cal.App.5th 375, 405–406, 388 ["imputed malice was a valid theory of attempted murder at the time petitioner entered his plea" and such plea "does not establish he was convicted under any particular theory of attempted murder, let alone a theory that remains valid after the effective date of Senate Bill No. 1437"], review granted Sep. 11, 2024, S286314; *People v. Das* (2023) 96 Cal.App.5th 954, 962 ["Without defendant's admission to having personally stabbed the victim with the intent to kill, we do not know whether that was the actual basis for defendant's plea, or whether defendant pled guilty because he believed the jury would have convicted him of attempted murder on a natural and probable consequences theory even if he was not the person who stabbed the victim"].)

We reject Hill's argument, for two reasons.

---

[10] The reporter's transcript of the June 3, 2019 hearing at which Hill entered his plea is not in the record.  On Hill's change of plea form, a box is checked indicating the factual basis for the plea was "stipulated," without more.

22

First, the record categorically establishes that he is ineligible for relief as a matter of law, which record refutes his allegation that he could not presently be convicted of murder or attempted murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3)). (See *Strong, supra,* 13 Cal.5th at p. 712 [section 1172.6, subdivision (a)(3)'s "because of" language requires a showing "that the 2019 changes supply a basis for the claim and so are *a* cause" of the claim for relief]; *Lewis, supra,* 11 Cal.5th at p. 957 [section 1172.6 "creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief"]; *People v. Reyes* (2023) 97 Cal.App.5th 292, 298 ["Various courts have commented that the intent of [section 1172.6] is to provide relief to offenders who could not be convicted of murder [or attempted murder] under the current law"].) But Hill *could* presently be convicted of murder or attempted murder even after the changes to sections 188 and 189 made by Senate Bill 1437. In fact, he actually *was* convicted by a jury of first degree murder under a direct aiding and abetting theory, and as discussed in our prior opinion on direct appeal, the evidence permitted the jury to convict him of attempted murder on that same theory—a theory that was valid before Senate Bills 1437 and 775 and that remains valid afterwards. (See *People v. Jenkins* (2021) 70 Cal.App.5th 924, 931.) Because the record of conviction establishes that Hill could still be convicted of attempted murder (or indeed, first degree murder) under current law, he is ineligible for relief under section 1172.6. (See *People v. Burns* (2023) 95 Cal.App.5th 862, 867; *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936–937; *People v. Flores* (2023) 96 Cal.App.5th 1164, 1173.) And because Hill's petition should have been summarily denied at the prima facie stage, any error at the subsequent evidentiary hearing was harmless (see *People v. Vance, supra,* 94 Cal.App.5th

23

at pp. 716–717)—or alternatively, we may affirm the denial of the petition at the evidentiary stage, even if given for the wrong reasons (*People v. Zapien, supra*, 4 Cal.4th at p. 976).

Second, Hill was ineligible for relief as a matter of law because his petition did not satisfy the threshold requirement with respect to count 3, that he was "convicted of . . . attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).)

It is true, generally, that "[w]hen a conviction is the result of a plea, no findings have been made as to whether any evidence in the record or allegation is true, except for what the defendant has expressly admitted," and that "[t]he prosecutor need not declare the People's theory [of the crime] in a charging document, at the preliminary hearing, or at the time of the plea." (*People v. Muhammad* (2024) 107 Cal.App.5th 268, 277, review granted Feb. 19, 2025, S288860, citing *People v. Flores* (2022) 76 Cal.App.5th 974, 987, 989–990.) We also assume, without deciding, that had the case gone to trial, the prosecution was free to pursue a different theory of liability than it had at the first trial, and that Hill's no contest plea did not admit to any particular theory of attempted murder.[11] (See *People v. Wilson* (1996) 43 Cal.App.4th 839, 849; *People v. Williams, supra*, 103 Cal.App.5th at p. 388.) But Hill's argument is, in essence, that had there been no plea, the prosecution could have proceeded to trial on count 3 under a theory of attempted murder based on the natural and probable consequences doctrine—i.e., that Hill aided and abetted Mitchell in an unspecified target offense (Hill's counsel suggested assault with a deadly weapon (§ 245, subd. (a)(2))), a natural and probable

---

[11] As noted, Hill's plea record is not before us. We therefore do not know what factual admissions were made in connection with his plea.

24

consequence of which was the premeditated attempted murder of Tereaun Berry, thereby "imput[ing]" malice to him "based solely on his . . . participation in a crime." (§ 188, subd. (a)(3).) Under the unusual circumstances of this case—where Hill entered a plea to attempted murder only after a trial at which he was convicted of the *first degree* murder of Tereaun Berry and that conviction was reversed on appeal—this argument simply makes no sense. Our opinion in *Hill, supra*, A149469, permitted the prosecution to simply accept a modification of the judgment "to reflect [Hill's] conviction for [the] attempted murder" of Tereaun Berry on count 1. (*Hill, supra*, A149469, p. 27.) Hill's argument that he subsequently pleaded no contest to attempted murder because he believed the prosecution would instead pursue a trial on a natural and probable consequences theory in order to obtain the same conviction that they could have simply accepted without any trial at all strains credulity past the breaking point.[12]

---

[12] We find the cases relied on by Hill inapposite, because they all involved defendants who entered into a plea agreement—long before the passage of either Senate Bills 1437 or 775—without ever going to trial, meaning the record of conviction was necessarily limited. (See *People v. Rivera* (2021) 62 Cal.App.5th 217, 236–237 [noting that whether petitioner was convicted under natural and probable consequences theory may be "conclusively determined" after trial from jury instructions but "[i]n contrast, when a petitioner has entered a plea to murder . . . the record of conviction will generally lack any comparable assurance of the basis for the conviction"]; *id*. at p. 225 [2017 plea to second degree murder]; *People v. Williams, supra*, 103 Cal.App.5th 375, 383–384 [2012 plea to attempted murder]; *People v. Flores, supra*, 76 Cal.App.5th at p. 978 [2010 plea to second degree murder]; *People v. Enyon* (2021) 68 Cal.App.5th 967, 971 [2013 plea to first degree murder].) As noted, under the unusual circumstances of this case, where there has been both a jury verdict following trial *and* a subsequent plea to the same charges, we do not consider a similarly limited record.

In sum, "a defendant convicted by plea cannot show eligibility for relief by asserting the People could have prosecuted him based on invalid theories when the record conclusively establishes that at the time of the plea, the People were operating under only one theory of the defendant's guilt, and that theory is still valid under current law." (*People v. Muhammad*, *supra*, 107 Cal.App.5th at p. 277.) The record in this case does exactly that, showing conclusively that the prosecution was always and only operating under the theory that Hill was guilty of the murder or attempted murder of Tereaun Berry under principles of direct aiding and abetting. Accordingly, he was not "convicted of . . . attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)) on count 3, and the trial court did not err in denying his petition for resentencing.

## DISPOSITION

The order denying the petition for resentencing is affirmed.

_____

                    RICHMAN, J.

We concur.


_____

STEWART,  P.J.


_____

MILLER, J.


(A168750P)

Solano County

Hon. Carlos G. Guiterrez

Counsel:
Kyle Gee under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Bridget Billeter Supervising Deputy Attorney General, Linda M. Murphy Deputy Attorney General for Plaintiff and Respondent